**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SAFE STORAGE LLC, | Case No. 12-1626 (GMS) |
| Plaintiff, | |
| v. | |
| HEWLETT-PACKARD COMPANY and 3PAR, INC., | |
| Defendants. | |
| SAFE STORAGE LLC, | Case No. 12-1628 (GMS) |
| Plaintiff, | |
| v. | |
| NETAPP, INC., | |
| Defendant. | |
| SAFE STORAGE LLC, | Case No. 12-1624 (GMS) |
| Plaintiff, | |
| v. | |
| DELL INC., | |
| Defendant. | |
| SAFE STORAGE LLC, | Case No. 13-928 (GMS) |
| Plaintiff, | |
| v. | |
| VMWARE, INC., | |
| Defendant. | |

**OPENING BRIEF IN SUPPORT OF CERTAIN DEFENDANTS'
MOTION TO STAY PENDING *INTER PARTES* REVIEW**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

I.     INTRODUCTION ................................................................................................ 1

II.    NATURE AND STAGE OF PROCEEDINGS ................................................... 2

III.   SUMMARY OF THE ARGUMENT ................................................................. 3

IV.    STATEMENT OF FACTS .................................................................................. 3

       A.    These lawsuits are in their earliest stages—discovery is still closed and no schedule has been entered ................................................................. 3

       B.    Safe Storage is a non-practicing entity ................................................. 3

       C.    The '346 patent relates to well-known computer networking techniques ............ 4

       D.    Every claim of the '346 patent is subject to an IPR or an IPR petition ................. 4

       E.    The overwhelming majority of claims addressed in IPRs are found invalid ......... 6

V.     LEGAL STANDARD .......................................................................................... 7

VI.    ARGUMENT ........................................................................................................ 8

       A.    Safe Storage will not be unduly prejudiced or tactically disadvantaged by a stay pending resolution of the IPRs .................................................. 8

       B.    The IPR process will simplify and streamline these cases ................................. 10

             1.   The Patent Office has already made a preliminary finding that seven of the '346 patent's nine claims are invalid ................................... 10

             2.   Statements made by the patent owner and the Patent Office during IPR will inform the Court on several issues ............................................ 11

             3.   A stay will prevent wasting the Court's and the parties' time and resources .......................................................................................... 12

       C.    The early stage of litigation strongly favors a stay .............................................. 14

VII.   CONCLUSION .................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIP Acquisition LLC v. Level 3 Communications LLC*,
    C.A. No. 12-1689-GMS, slip op. (D. Del. Jan. 9, 2014) ..................................................11, 12

*Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*,
    No. C-12-1107 GMS, 2014 WL 1369721 (D. Del. April 7, 2014)...............................8, 10, 14

*Ethicon, Inc. v. Quigg*,
    849 F.2d 1422 (Fed. Cir. 1988)..................................................................................................7

*Evolutionary Intelligence LLC v. Yelp Inc.*,
    No. C-13-03587 DMR, 2013 WL 6672451 (N.D. Cal. Dec. 18, 2013)....................................8

*First Am. Title Ins. Co. v. McLaren LLC*,
    No. C-10-363-GMS, 2012 WL 769601 (D. Del. Mar. 9, 2012) ...............................................7

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    721 F.3d 1330 (Fed. Cir. 2013)...............................................................................6, 12, 13, 14

*Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*,
    CIV.A. 04-1337-KAJ, 2005 WL 2465898 (D. Del. May 18, 2005) .........................................9

*In re Bear Creek Techs. Inc.*,
    No. 12-md-2344-GMS, 2013 WL 3789471 (D. Del. Jul. 17, 2013)..............................9, 10, 13

*Neste Oil Oyj v. Dynamic Fuels, LLC, et al.*,
    C.A. No. 12-1744-GMS, 2013 WL 3353984 (D. Del. July 2, 2013)............................8, 10, 14

*Nexans, Inc. v. Belden, Inc.*,
    No. 12-1491-SLR-SRF, 2014 U.S. Dist. LEXIS 20116 (D. Del. Feb. 19, 2014)...................13

*Richtek Tech. Corp. v. UPI Semiconductor Corp.*,
    No. 09-05659, 2011 WL 445509 (N.D. Cal. Feb. 3, 2011) ....................................................12

*Round Rock Research LLC v. Dole Food Co. Inc.*,
    No. C-11-1239-RGA, 2012 WL 1185022 (D. Del. Apr. 6, 2012)............................................9

*Sunpower Corp v. Panelclaw, Inc.*,
    No. 12-1633-GMS, slip op. (D. Del. May 16, 2014)..............................................7, 12, 13, 14

*Wall Corp. v. BondDesk Grp., L.L.C.*,
    C.A. No. 07-844-GMS, 2009 U.S. Dist. LEXIS 20619 (D. Del. Feb. 24, 2009) .....................8

*Wechsler v. Macke Int'l Trade, Inc.*,
    486 F.3d 1286 (Fed. Cir. 2007)................................................................................................9

**Statutes**

35 U.S.C. § 313.............................................................................................................................11

35 U.S.C § 314(b) ......................................................................................................................2, 9

## I.   INTRODUCTION

Every claim of the sole patent-in-suit is subject to an instituted *Inter Partes* Review ("IPR") and/or a pending IPR petition, and the Court should stay these cases pending resolution of those proceedings.   The United States Patent and Trademark Office ("Patent Office") has instituted an IPR against seven of the nine claims of the patent-in-suit, and it will reach a final validity determination on those claims by March 20, 2015.   Another IPR petition is pending against all nine claims of the patent-in-suit, and the Patent Office will decide by early December 2014 whether to institute a second IPR trial.

Absent a stay, this Court and the parties will waste significant time and resources pursuing claim construction, discovery, expert reports, and dispositive motions that are likely to be rendered moot or significantly impacted by the Patent Office's decisions in the pending IPRs. The statistics are telling.   96% of claims that have been subject to an instituted IPR trial have been invalidated.   90% of final written IPR decisions have resulted in cancellation of all claims at issue.   Likewise, it is highly likely that the IPR proceedings involving the patent-in-suit will partially or completely invalidate the patent.   Even if fewer than all claims in the patent-in-suit are cancelled, the IPR process will simplify the issues in these cases at least by informing the Court on several issues and narrowing validity issues raised by the Petitioner Defendants. Allowing these cases to proceed in parallel with the IPRs would be unproductive and inefficient for the parties and the Court.

The early stage of these litigations also supports a stay—no case schedule or trial date has been set and no discovery requests have been exchanged.   Furthermore, the plaintiff is a non-practicing patent holding company that does not compete with the defendants, so there is no unfair prejudice to plaintiff associated with a stay.

## II.     NATURE AND STAGE OF PROCEEDINGS

Between November 2012 and June 2013, Plaintiff Safe Storage filed nineteen (19) lawsuits against at least twenty (20) companies in the computer storage industry alleging infringement of U.S. Patent No. 6,978,346 ("'346 patent").  The defendants answered the complaints, but the lawsuits have been largely on hold since May 27, 2013, when the first of eleven separate motions to transfer was filed with the Court.  (*See*, *e.g.*, 12-cv-01626, D.I. 18; 12-cv-01628, D.I. 19; 13-cv-00928, D.I. 16.)  On June 2, 2014, the Court denied the defendants' motions to transfer.  (12-cv-01624, D.I. 28; 12-cv-01626, D.I. 33; 12-cv-01628, D.I. 27; 13-cv-00928, D.I. 27.)  No case schedule is in place, no discovery has been taken, no claim construction has occurred, and no trial date has been set.

On September 27, 2013, while the motions to transfer were pending, defendants Dell Inc. ("Dell"), NetApp, Inc. ("NetApp"), and Hewlett-Packard Company ("HP") jointly filed an IPR Petition for the '346 Patent.  (Declaration of Mark W. Taylor in Support of Defendants' Motion to Stay Pending Inter Partes Review (hereinafter, "Taylor Decl."), Ex. 1.)  On March 20, 2014, the Patent Office instituted an IPR covering seven of the '346 patent's nine claims, determining that "the information presented in the Petition shows[ ]that there is a reasonable likelihood that Petitioners would prevail in showing unpatentability of claims 1-3 and 5-8 of the '346 patent." (Taylor Decl., Ex. 2 at 2.)  A final decision on the IPR is expected by March 20, 2015.  (*See* 37 C.F.R. § 42.100(c).)  Dell, NetApp, and HP also filed an additional IPR on the '346 patent in November 2013, for which the Patent Office declined to institute an IPR.

In addition, on June 4, 2014, Defendant VMware filed a petition for IPR of all claims of the '346 patent, setting forth three new proposed invalidity grounds.  (Taylor Decl., Ex. 3.)  An institution decision on VMware's IPR petition will occur by December 4, 2014.  (*See* 35 U.S.C § 314(b); 37 C.F.R. § 42.100(c).)

## III.    SUMMARY OF THE ARGUMENT

The Court should stay these cases pending the outcome of the IPRs.  The Court considers three factors in determining whether to stay litigation.  All three factors strongly support a stay in these cases:

1)    A stay will simplify disputed issues in these cases, and may completely dispose of these cases.

2)    The minimal delay caused by a stay will not prejudice or disadvantage Safe Storage, a non-practicing entity that does not compete with any of the defendants.

3)    A stay now, before any discovery or claim construction is conducted, will prevent the Court and the parties from wasting significant resources.

## IV.    STATEMENT OF FACTS

### A.    These lawsuits are in their earliest stages—discovery is still closed and no schedule has been entered

This litigation is still in its infancy.  Safe Storage's complaints alleging infringement of the '346 patent were filed between November 2012 and June 2013, but the cases have been quiet while the Court ruled on eleven motions to transfer.  The defendants have answered, but no other activity has occurred.  (*See* 12-cv-01624; 12-cv-01626; 12-cv-01628; 13-cv-00928.)  The Court has not set a case schedule, discovery has not opened, and claim construction has not begun.  No claim construction hearing or trial has been scheduled.

### B.    Safe Storage is a non-practicing entity

Safe Storage is a patent holding company that was incorporated in Delaware just weeks before it began filing these lawsuits.  (*See* Taylor Decl., Ex 4.)  Safe Storage does not practice any of the claims of the '346 patent and does not appear to have any business other than as a patent assertion entity.

**C.    The '346 patent relates to well-known computer networking techniques**

The '346 patent claims apparatuses comprising host computers networked through switches and redundant storage controllers to storage devices called RAIDs.  (*See e.g.*, D.I. 1[1], Ex. A at Abstract, cl. 1; Taylor Decl., Ex. 1 at 3-4.)  RAIDs, or redundant arrays of inexpensive disks, are backup storage devices with multiple hard disks that each store duplicate information so that if one hard disk fails the stored information can be recovered from one of the other hard disks.  In effect, the '346 patent claims a way of redundantly connecting a network comprised of switches, RAID controllers, and host computers to ensure system operability is maintained even if one or more hardware components fail.  Figure 4 of the '346 patent, annotated below, illustrates these components of the claimed apparatuses:



**D.    Every claim of the '346 patent is subject to an IPR or an IPR petition**

On September 27, 2013, Dell, HP, and NetApp petitioned for *inter partes* review of all nine claims of the '346 patent on five grounds.  (Taylor Decl., Ex. 1.)  The Patent Office instituted the IPR on March 20, 2014, finding that the petitioners were likely to succeed in showing that seven of the '346 patent's nine claims were anticipated by U.S. Patent No.

---

[1]       References to docket entries apply to each of the four independent cases unless specified otherwise.

5,574,950 ("'950 patent").  (*See* Taylor Decl., Ex. 2 at 23 (instituting IPR of claims 1-3 and 5-8 in light of the '950 patent).)  The '950 patent was not considered during prosecution of the '346 patent, and teaches a system of redundant storage arrays interconnected with computers in the same way claimed in the '346 patent.  This is shown in the annotated figures below from the '950 and '346 patents, each having host computers (A), connected to switches (B), that interconnect (C) with multiple storage or RAID controllers (D):

**Figure 4 of the '346 Patent (annotated)**          **Figure 3 of the '950 patent (annotated)**



(*See* Taylor Decl., Ex. 1 at 4, 12, 13-18.)

On June 4, 2014, VMware petitioned for IPR of all nine claims of the '346 patent on three additional grounds.  (Taylor Decl., Ex. 3 at 1.)  Two of the three grounds are obviousness combinations involving the '950 patent—which the Patent Office already found was likely to anticipate seven claims of the '346 patent—and another reference that was not reviewed during prosecution.  (*Id.* at 3.)  VMware's IPR petition directly addresses the concerns the Patent Office expressed in declining to institute the prior IPRs on claims 4 and 9. [2]

---

[2]     The Patent Office declined to institute the first IPR petition as to claims 4 and 9 on the basis that the primary prior art reference asserted against those claims (Weygant) failed to show the "exchange/exchanges information" limitation.  (Taylor Decl., Ex. 2 at 23.)  However, the

On June 13, 2014, IBM and Oracle petitioned for IPR of all nine claims of the '346 patent on the same three grounds as VMware's petition.  (Taylor Decl., Ex. 5 at 3.)

### E.      The overwhelming majority of claims addressed in IPRs are found invalid

With the America Invents Act of 2011, Congress introduced *Inter Partes* review at the Patent Office to "establish a more efficient and streamlined patent system" for evaluating the validity of issued patents.  H.R. Rep. No. 112-98, pt. 1, at 40 (2011).  After receiving a petition from the patent challenger, the Patent Office must decide whether to institute an IPR proceeding within six (6) months and issue a final decision twelve (12) months later.  According to the statute, the final decision is binding on the District Court immediately upon issuance—prior to any appeal.  The Patent Office's validity determination trumps a district court's ruling and even a jury's ruling on validity.  *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1347 (Fed. Cir. 2013).

Further, instead of validity being decided by a single patent examiner, like it was under the old reexamination process, the Patent Office determines validity under the new IPR process using a panel of three administrative law judges.  Notably, the initial decision at 6 months and the final decision at eighteen (18) months are both decided by the same three-judge panel.  Not surprisingly, the initial decision from that panel and the final decision typically reach the same outcome: claims accepted for review by the Patent Office are invalidated 96% of the time.  (*See* Taylor Decl., Ex. 6.[3])  In 90% of IPRs that are instituted, **all** challenged claims are found invalid or disclaimed by the Patent Owner.  (*Id.*)  In other words, in nine out of ten cases where an IPR is

Patent Office found that the "exchange/exchanges information" limitation was present in the '950 patent (*Id.* at 17), which is the primary reference asserted against those claims by VMware.

[3]      Statistics in Exhibit 6 are based on Inter Partes Review ("IPR") proceedings from the first IPR petition (filed on September 16, 2012) through March 16, 2014.

instituted, the IPR proceeding completely resolves the underlying patent litigation dispute and ends litigation.

Parties and district courts realize several benefits from the new IPR process.  If the Patent Office finds all asserted claims invalid, there will no longer be a need for trial and the expensive discovery process.  Even if some challenged claims survive, the IPR process still simplifies related litigation.  For example, if some of the claims are cancelled, this informs the damages analysis and narrows the number of possible asserted claims.  In the rare case where none of the claims are cancelled, the IPR still simplifies related litigation by providing the Court with further information on the patent owner's and Patent Office's views on the patent's scope and by estopping petitioners from re-litigating many validity issues.  No matter the outcome, IPRs simplify related district court litigation by providing discovery, claim construction, and dispositive motion efficiencies.

## V.    LEGAL STANDARD

Courts have the inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a Patent Office administrative proceeding. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988).  When determining whether a stay is warranted, the Court balances three factors: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party, (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and a trial date has been set."  *First Am. Title Ins. Co. v. McLaren LLC*, No. C-10-363-GMS, 2012 WL 769601, at *4 (D. Del. Mar. 9, 2012) (citation omitted); *see also* Taylor Decl., Ex. 7, *Sunpower Corp v. Panelclaw, Inc.*, No. 12-1633-GMS, slip op. at 1-2 (D. Del. May 16, 2014).

## VI.   ARGUMENT

All three factors weigh heavily in favor of staying these cases during the pendency of the IPRs.

### A.   Safe Storage will not be unduly prejudiced or tactically disadvantaged by a stay pending resolution of the IPRs

In deciding whether to stay a case, courts must consider whether granting a stay would cause the nonmoving party undue prejudice or place it at a clear tactical disadvantage.  *Neste Oil Oyj v. Dynamic Fuels, LLC, et al.*, C.A. No. 12-1744-GMS, 2013 WL 3353984, at *2 (D. Del. July 2, 2013).  Importantly, the mere potential for delay is insufficient to establish undue prejudice. *Id.* (citing cases); *Wall Corp. v. BondDesk Grp., L.L.C.*, C.A. No. 07-844-GMS, 2009 U.S. Dist. LEXIS 20619, at *4 (D. Del. Feb. 24, 2009).

Here, Safe Storage would be neither unduly prejudiced nor tactically disadvantaged.  This is made clear when reviewing the factors considered by this Court in determining whether there is undue prejudice or a clear tactical advantage: (i) the relationship between the parties; (ii) the timing of the IPRs and stay request; and (iii) the status of the IPRs.  *Id.*

First, Safe Storage and the Petitioner Defendants are not competitors.  Safe Storage is a non-practicing patent holding company.  Accordingly, Safe Storage faces no loss of market share or a competitive disadvantage due to a stay pending resolution of the IPRs.  As the Court has noted, "[t]he relationship between the parties is no impediment to a stay… where the plaintiff is a non-practicing entity."  *See Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, No. C-12-1107 GMS, 2014 WL 1369721, at *4 (D. Del. April 7, 2014) (noting that non-practicing plaintiff will not be prejudiced by a stay pending IPR and citing similar cases); *see also Evolutionary Intelligence LLC v. Yelp Inc.*, No. C-13-03587 DMR, 2013 WL 6672451, at *8 (N.D. Cal. Dec. 18, 2013) (granting motion to stay pending *inter partes* review.)  As the Federal

Circuit has noted, "[n]ormally, if the patentee is not selling a product, by definition there can be no lost profits" and the patentee is not prejudiced by a stay. *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1293 (Fed. Cir. 2007) (quoting *Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548 (Fed.Cir.1995)).

Second, Safe Storage will suffer no prejudice because this litigation is in the earliest of stages—fact discovery has not begun, no claim construction has occurred, and no schedule has been entered or trial date set.  As this Court stated, there is "little tactical disadvantage," if any, associated with granting a stay early in the discovery period.  *Round Rock Research LLC v. Dole Food Co. Inc.*, No. C-11-1239-RGA, 2012 WL 1185022, at *2 (D. Del. Apr. 6, 2012) (granting stay pending reexamination).  There is even less prejudice in cases like these, where discovery has not even begun.  *See Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, CIV.A. 04-1337-KAJ, 2005 WL 2465898 (D. Del. May 18, 2005) (no undue prejudice where discovery had not yet begun).

Third, any prejudice that Safe Storage might suffer will be limited by the short-duration of the stay.  Here, the Patent Office will reach a final decision on the validity of seven of the '346 patent's nine claims by March 20, 2015—less than 10 months from now.  37 C.F.R. § 42.100(c); *see also In re Bear Creek Techs. Inc.*, No. 12-md-2344-GMS, 2013 WL 3789471, at *3 n.8 (D. Del. Jul. 17, 2013) (granting stay pending *inter parties* reexamination in suit by non-practicing plaintiff despite potential delay of up to three years).  Further, the Patent Office will make a preliminary validity determination on all of the '346 patent's claims based on the three new invalidity grounds presented in VMware's IPR petition by December 4, 2014.  35 U.S.C. § 314(b).

Finally, a stay will not unduly prejudice Safe Storage because any delay can be remedied through money damages, and the stay will save the Court and the parties from expending resources litigating issues that may be rendered moot by the Patent Office proceedings.  *See Bear Creek Techs.*, 2013 WL 3789471, at *3 n.8.

**B.      The IPR process will simplify and streamline these cases**

Staying these cases until the IPR process is complete will simplify the issues in several ways.  First, the Patent Office will likely find that some or all of the asserted claims are invalid, thus disposing of some or all of the possible issues in these cases.  (Taylor Decl., Ex. 6 (the Patent Office has invalidated 96% of claims in instituted IPRs).)  Second, even if some claims survive, the issues will necessarily be simplified at least because (a) some validity arguments and prior art will be removed from these cases due to estoppel; and (b) the Patent Office and the patent owner will make statements which will inform the scope and application of the claims.

To proceed with these cases in parallel with the IPRs would do the opposite – the results and statements made during the IPRs are likely to further complicate the litigation, rendering progress moot and/or requiring significant adjustments based on the results of the IPRs.  Thus, these cases should be stayed.

**1.      The Patent Office has already made a preliminary finding that seven of the '346 patent's nine claims are invalid**

The Patent Office's decision to institute IPR proceedings on seven of the '346 patent's nine claims is a good indicator that at least some of those seven claims will be cancelled by March 20, 2015—simplifying this case.  *See Neste Oil*, 2013 WL 3353984, at *4 (granting stay, noting IPR will result in issue simplification even if only some claims are cancelled); *see also Bonutti Skeletal*, 2014 WL 1369721, at *4 (granting stay where only some of the potentially

asserted claims were subject to reexamination).  In fact, on average, 96% of claims subject to an instituted IPR are found to be unpatentable.  (Taylor Decl., Ex. 6.)

The odds are good that VMware's pending IPR petition will also result in the cancellation of at least some claims.  The Patent Office has instituted 84% of all IPR petitions filed, including 95% of challenged claims.  (Taylor Decl., Ex. 6.)  And again, 96% of claims subject to instituted IPRs have been cancelled.  (Taylor Decl, Ex. 6.)

With the final Patent Office decision on the validity of seven of the claims due in ten (10) months, staying a case pending IPR will likely avoid significant amounts of unnecessary work. *See* Taylor Decl., Ex. 8, *AIP Acquisition LLC v. Level 3 Communications LLC*, C.A. No. 12-1689-GMS, slip op. at 5 (D. Del. Jan. 9, 2014) (noting that a stay can "avoid wasting resources on a *Markman* hearing and at trial to address claims that have a 'reasonable likelihood' of being amended or canceled.")  Here, the Patent Office has already determined there is a "reasonable likelihood" of at least seven claims being found to be anticipated.  (*See* Taylor Decl., Ex. 2 at 2.)

### 2. Statements made by the patent owner and the Patent Office during IPR will inform the Court on several issues

The patent owner has already provided a preliminary written response to the first IPR petition, and the patent owner is scheduled to provide at least two more responsive filings as well as oral argument in the instituted IPR during the next seven months.[4]  (*See* Taylor Decl., Ex. 9; Ex. 10 at 5).  Likewise, the patent owner is scheduled to provide a preliminary response to VMware's IPR petition (*see* 35 U.S.C. § 313), and if that IPR is also instituted, the patent owner will again have deadlines for at least two additional response filings and oral argument.  The patent owner's statements and arguments have had, and will continue to have, relevance to the

---

[4]     Due to significant overlap in claim language and dependent relationships of some claims, even the claims that are not included the instituted IPR are likely to be impacted by the patent owner's statements in the IPR proceedings.

scope of the '346 patent.  In this way, and like reexamination, the record from the IPR becomes part of the prosecution history of the patent.  *See Richtek Tech. Corp. v. UPI Semiconductor Corp.*, No. 09-05659, 2011 WL 445509, at *3 (N.D. Cal. Feb. 3, 2011) ("Even if none of the asserted claims are cancelled or amended [in reexamination], this action will be shaped by the richer prosecution history available to inform the claim construction process." (*citing Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed. Cir. 1983)).  Staying the cases during the IPRs will allow the Court to benefit from that additional intrinsic record.  *See* Taylor Decl., Ex. 8, *AIP Acquisition LLC*, No. C-12-617-GMS, slip op. at 5 ("If the [patent-in-suit] is not invalidated, the court and the parties will have the benefit of the IPR record in any post-stay *Markman* process.") (citing *Gioello Enters. Ltd v. Mattel, Inc.*, No- C-99-375-GMS, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001)); *see also, e.g.*, Taylor Decl., Ex. 7, *Sunpower Corp.*, No. 12-1633-GMS, slip op. at 4 (granting motion to stay pending IPR proceedings and noting that "[e]ven if the claims were to survive the IPR process entirely intact, the court would still benefit from the PTAB's expertise").  Moreover, the cancellation or amendment of any claims in the patent-in-suit may reduce the number of claim terms this Court will need to construe.

### 3.	A stay will prevent wasting the Court's and the parties' time and resources

The Court and the parties will spend unnecessary resources on duplicative efforts if these cases are not stayed.  All of the parties' and Court's work advancing this litigation through discovery and claim construction could be undone by the Patent Office's final decision in the IPRs, which would be binding on this Court.  *Fresenius* not only requires this outcome, but also provides a cautionary tale of the potential consequences of allowing litigation to proceed in parallel with Patent Office proceedings.  The result of not staying the litigation in *Fresenius* was nearly a decade of litigation—with untold costs for the parties and expenditure of resources by

the Court—all for naught. After nearly ten years of expensive litigation, a jury found the patent-in-suit valid and the Federal Circuit affirmed the decision. *Fresenius*, 721 F.3d at 1332–35. However, the Patent Office found all claims invalid in a simultaneous reexamination. *Id.* The jury decision and the Federal Circuit's decision were thrown out. *Id.* at 1347.

Here, if these cases are not stayed, all the effort the Court and the parties expend litigating these cases between now and March 2015 could be wasted. *Bear Creek*, 2013 WL 3789471, at *3 n.8 (noting that absent a stay pending *inter partes* reexamination, "the court's and the parties' time and resources could be wasted") (citation omitted). Even if these cases are not completely disposed of by the IPR process, the scope of the case may be significantly altered such that discovery completed is no longer relevant. For example, the claims of the asserted patent may be amended in one or more of the IPRs, changing the scope of the claims and/or giving rise to intervening rights, which could significantly alter the list of products at issue and impact any determination of damages.

Even if the Patent Office elects not to institute a further IPR based upon VMware's recent petition, thus leaving two claims at issue before this Court that are not subject to IPR, there need not be complete overlap between the district court action and the IPRs to warrant granting a stay, and issues in this Court would still be substantially simplified by allowing the IPR in progress to proceed first. *See*, *e.g.*, *Nexans, Inc. v. Belden, Inc.*, No. 12-1491-SLR-SRF, 2014 U.S. Dist. LEXIS 20116, at *11 (D. Del. Feb. 19, 2014), *adopted by* 2014 U.S. Dist. LEXIS 32322 (D. Del., Mar. 12,2014); Taylor Decl., Ex. 7, *Sunpower Corp.*, No. 12-1633-GMS, slip op. at 4.

In short, staying these cases will eliminate the risk of litigating duplicate or unnecessary issues—leading to a situation like *Fresenius*—and will conserve the resources of the parties and the Court.

### C.    The early stage of litigation strongly favors a stay

The early stage of the cases strongly supports staying the cases until the IPRs are resolved.  These cases have advanced little beyond initial pleadings.  The Court has not yet set a case schedule or a trial date.  Discovery has not begun.  Claim construction issues have not been crystallized or briefed, and the Court has not set a date for a *Markman* hearing.  "Staying a case in its early stages can be said to advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."  *Neste Oil*, 2013 WL 3353984, at \*5 (internal quotations omitted).  The Patent Office will likely issue a final decision on the validity of seven of the '346 patent's nine claims by the end of March 2015 and must issue a decision on whether to institute VMware's IPR petition by early December 2014.  With no claim construction hearing date or trial date set by the Court, these factors weigh strongly in favor of a stay.  *Neste Oil*, 2013 WL 3353984, at \*5.  As the *Fresenius* case demonstrates, a much greater risk arises from delaying the entry of a stay, which likely will result in the Court's and parties' resources being wasted on litigation proceedings that ultimately prove to be unnecessary.  *See Fresenius*, 721 F.3d at 1332-35.

In fact, the rationale favoring stays pending IPR is so strong early in litigation that district courts have found it valuable to stay a case even before the Patent Office institutes an IPR.  *See, e.g.*, *Neste Oil*, 2013 WL 3353984 (granting motion to stay prior to IPR institution); *Bonutti Skeletal*, 2014 WL 1369721 at \*\* 1, 4; Taylor Decl., Ex. 7, *Sunpower Corp.*, No. 12-1633-GMS, slip op. at 4.  Thus, VMware's pending IPR petition by itself counsels strongly in favor of a stay.  Here, where an IPR has already been instituted on the majority of the '346 patent's claims and another IPR petition is pending against all of the '346 patent's claims, the rationale favoring a stay becomes almost overwhelming.

## VII.    CONCLUSION

The lack of undue prejudice to Safe Storage, simplification of issues, and early stage of these cases strongly favor entering a stay.  The Patent Office will likely cancel many, if not all, of the '346 patent's claims.  A stay now will prevent the Court and the parties from wasting time and resources in these parallel proceedings.  As a result, the Petitioner Defendants request that the Court stay these cases pending resolution of the IPRs concerning the '346 patent.

Dated:  June 16, 2014

DRINKER BIDDLE & REATH  LLP

By:     */s/ Francis DiGiovanni*
      Francis DiGiovanni (DE #3189)
      francis.digiovanni@dbr.com
      1100 N. Market Street
      Wilmington, DE 19801
      (302) 467-4266

Thomas Dunham (*pro hac vice*)
*TDunham@winston.com*
J. Michael Woods (*pro hac vice*)
*MWoods@winston.com*
Corrine Saylor (*pro hac vice*)
*CSaylor@winston.com*
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC  20006
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

*Attorneys for Defendant Dell Inc.*

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:     */s/ Jody C. Barillare*
      Jody C. Barillare (DE #5107)
      jbarillare@morganlewis.com
      1007 North Orange Street, Suite 501
      Wilmington, DE  19801
      (302) 574-3000

Michael J. Lyons (*pro hac vice*)
*mlyons@morganlewis.com*
W. Scott Tester (*pro hac vice*)
*wtester@morganlewis.com*
3000 El Camino Real, Suite 700
Palo Alto, CA  94306

Mark W. Taylor (*pro hac vice*)
*mark.taylor@morganlewis.com*
1111 Pennsylvania Ave., NW
Washington, DC  20004

*Attorneys for Defendants Hewlett-Packard Company, 3PAR, Inc., and NetApp, Inc.*

FISH& RICHARDSON P.C.

By:     */s/ Douglas E. McCann*
      Douglas E. McCann (#3852)
      Jeremy D. Anderson (#4515)
      Robert M. Oakes (#5217)
      222 Delaware Avenue, 17th Floor
      P.O. Box 1114
      Wilmington, DE 19899-1114
      (302) 652-5070
      *dmccann@fr.com*
      *oakes@fr.com*
      *janderson@fr.com*

Katherine S. Lutton (*pro hac vice*)
*lutton@fr.com*
Shelley K. Mack (*pro hac vice*)
*mack@fr.com*
Leeron G. Kalay (*pro hac vice*)
*kalay@fr.com*
500 Arguello Street, Suite 500
Redwood City, CA 94063
(650) 839-5070

Michael R. Rueckheim (*pro hac vice*)
*rueckheim@fr.com*
1221 McKinney St., Suite 2800
Houston, TX 77010
(713) 654-5300

*Attorneys for Defendant VMware, Inc.*